531 P.2d 949

In re ENVIRONMENTAL PLANNING COM-
MISSION OF the CITY OF ALBUQUER-
QUE ruling on case Z–307, Coronado Shop-
ping Center Expansion:

Ann W. HYDER, Mary Alice Root and
Philip D. Thacher, Appellants,

v.

CITY OF ALBUQUERQUE, City Commis-
sion of the City of Albuquerque, Environ-
mental Planning Commission of the City
of Albuquerque, Dale Bellamah Land Com-
pany, Inc., Bellamah Properties, Inc., Dale
Bellamah Corporation, Inc. and Ernest W.
Hahn, Inc., Appellees.

No. 9988.

Supreme Court of New Mexico.

Nov. 27, 1974.

Rehearing Denied Feb. 10, 1975.

Klecan & Roach, Albuquerque, for ap-
pellants.

J. Victor Pongetti, Bill Chappell, Jr.,
Modrall, Sperling, Roehl, Harris & Sisk,
John R. Cooney, James A. Thompson, Asst.
City Atty., Albuquerque, Barrett, Stearns,
Collins, Gleason & Kinney, Richard B.
Collins, Torrance, Cal., for appellees.

OPINION

McMANUS, Chief Justice.

The litigation now before us began as an
appeal to the District Court of Bernalillo
County for the purpose of reviewing a rul-
ing of the Environmental Planning Com-
mission for the City of Albuquerque, here-
inafter referred to as EPC. The trial
judge granted a motion for summary judg-
ment against the appellants. This appeal
followed.

All of the problems related focus around
the existing Coronado Shopping Center in
northeast Albuquerque and a request by
the developers for an enlargement of the
center.

As background, the land in question, in-
cluding the expansion area, was zoned C–2
in 1956 and the zoning, then and now, per-
mits use of the land for the purposes of a
shopping center. On August 3, 1973, the
developers filed a revised development
plan, pursuant to an ordinance of the City
of Albuquerque, for an expanded shopping
center and application for approval there-
of, and for the issuance of building per-
mits. This application was filed with the

city planning department and circulated by it among other city departments for comments. Subsequently, the planning department made findings to the effect that the site of the expansion was zoned C–2 for a shopping center and that the proposed development would not violate adopted air quality regulations. There were additional findings concerning traffic, bus stops and on-site locations, landscaping and expansion of city utilities. The planning department recommended approval of the plan, subject to their above findings. On September 18, 1973, the EPC considered the revised development plan and after hearing testimony of various experts approved the plan subject to numerous conditions, such as bearing the cost of utility and traffic improvements and signals. Other requirements dealt with fire and water and air quality regulations, present and future.

On October 3, 1973, two sets of litigants appealed to the City Commission, one group being the plaintiffs in this cause. The thrust of the appeal to the City Commission was that the EPC had not taken possible effects on air pollution into account in approving the revised development plan. Briefs were submitted and the matter was considered by the Commission who declined to hear the appeals. The plaintiffs then filed the "appeal de novo" in the district court. Both parties filed motions for summary judgment and after several hearings the trial judge caused the following to be entered:

"ORDER OF DISMISSAL

"Upon Motions for Summary Judgment filed by plaintiffs and by respondents the Court finds that there is no genuine issue as to any material fact and that as a matter of law the plaintiff-petitioners are not persons in interest within the meaning of Section 14–18–8 NMSA 1953, nor are they aggrieved persons within the meaning of Section 14–20–7 NMSA 1953, wherefore

"IT IS ORDERED, ADJUDGED AND DECREED that the above cause is DISMISSED."

This appeal followed.

All parties agree that the ordinance covering the use of the land on which the construction is to be placed is still in effect and does not prevent the construction of or addition to the existing shopping center.

Appellants contend that the court erred in granting a motion for summary judgment for the reason, among others, that the court failed to recognize the powers of the EPC.

At this point it might be helpful to analyze the various statutes and ordinances which govern this appeal. The Albuquerque City Commission Ordinance, No. 249–1972, which created the EPC reads as follows:

"* * *

"SECTION 2. *Duties, Responsibilities, and Powers.*

"a. Delegation by City Commission: There is hereby delegated to the EPC the following power and authority:

"(1) Study: The EPC shall study urban and regional planning and means of protecting and improving the environment. The EPC may request assistance of staff of the City of Albuquerque by request to the City Manager.

"(2) Advisory Functions: The EPC shall advise the City Commission and City staff concerning the development and revision of community goals, plans for urban development and protection of the environment, policies on development and on protection of the environment, ordinances appropriate for effecting such plans and policies, annexation to the City, programming of capital improvements for the City, the designation of land desirable and needed for public purposes, the adoption of air and water quality standards, and other appropriate matters.

"(3) Public Education. The EPC shall promote the understanding of planning and environmental matters among public officials as well as residents of Albuquerque and its environs.

"(4) Environmental Impact Analysis: The EPC shall approve, subject to appeal to the City Commission, all environmental impact statements prepared by the City or required of others by the City.

"(5) Other Duties, Responsibilities, and Powers: The EPC has such other duties, responsibilities, and powers as may be delegated to it by the City Commission, including but not limited to the City's Comprehensive Zoning Ordinance and Subdivision Ordinance.

"* * *."

■ A careful reading of the above quoted ordinance reveals no direct or indirect delegation of power to the EPC to make final decisions on matters such as are before this court. Neither the EPC nor any other adjunct of the City of Albuquerque may exercise zoning powers or any other power unless such powers are granted by the legislative body having authority to do so. The EPC has not been delegated the power to deny development plans or refuse to issue building permits on the basis of alleged air quality effects, inadequacy of present air quality regulations, et cetera. In fact, Ordinance 249–1972, supra, reflects that the EPC is only an advisory body of the City of Albuquerque. There are, however, other agencies authorized to promulgate air pollution regulations. One of these is the Albuquerque-Bernalillo County Air Quality Control Board which was enacted pursuant to §§ 12–14–1 to 12–14–13, N.M.S.A.1953 (Supp. 1973), known as the "Air Quality Control Act." Pertinent portions of the Air Quality Control Act, supra, provide for the following, as set out in State ex rel. Norvell v. Arizona Public Service Co., 85 N.M. 165, 166, 510 P.2d 98, 99 (1973):

"The New Mexico Air Quality Control Act of 1967 designated the * * * [Board as defined in § 12–14–2D, N.M. S.A.1953 (Supp.1973)] as the air pollution control agency for all purposes under federal legislation relating to air pollution. The act also specifically authorizes the board to:

"(a) prevent or abate air pollution;

"(b) develop plans for the regulation, control, prevention or abatement of air pollution;

"(c) classify and record air contaminant sources;

"(d) encourage voluntary co-operation in the preservation, restoration or improvement of air purity;

"(e) develop facts and make investigations and studies, the results of which are to be reduced to writing if any enforcement action is contemplated, and a copy thereof furnished to the owner or occupants of the premises before the action is filed;

"(f) cause legal proceedings to be instituted to compel compliance with the Air Quality Control Act. [§ 12–14–5, N.M.S.A.1953.]" See § 12–14–5, N. M.S.A.1953 (Supp.1973).

"The act, as amended, authorizes the board to require any person emitting an air contaminant to (a) install, use and maintain monitoring devices; (b) sample emissions; (c) maintain records of the nature and amounts of emissions; (d) furnish reports on performance of emission control devices; and (e) provide other information relating to emission of air contaminants. [§ 12–14–5E, N.M.S. A.1953 (1972 Interim Supp.).]" See § 12–14–5E, N.M.S.A.1953 (Supp.1973).

"The act contains the following provision:

"'The Air Quality Control Act * * * is supplementary to other legislation, and does not repeal any laws except those in direct conflict therewith. All county and municipal ordinances, and all state, county and municipal regulations [* * *] relating to air quality and air pollution, are continued in effect * * * unless revised or repealed * * *.' [§ 12–14–13, N.M.S.A.1953.]" See § 12–14–13, N.M.S.A.1953 (Supp.1973).

The developers admitted in their oral argument that their proposed development would fall within the province and control of this act insofar as the City of Albuquerque and Bernalillo County are concerned. It seems clear that the above act and the Albuquerque-Bernalillo County Air Quality Control Board created pursuant to it, and not the EPC, are vested with the powers, duties and responsibilities of maintaining adequate environmental safeguards in the City of Albuquerque. In fact, counsel for the developers stated during oral arguments:

"In New Mexico, the air is protected —the quality of air is protected by the state and local air quality control boards and not by the zoning boards. That is the statutory scheme with which the court is very familiar by virtue of the Norvell case. [State ex rel. Norvell v. Arizona Public Service Co., supra.] One of our principal arguments in the trial court was to the effect that assuming, for the sake of argument, that some one ought to impose additional air quality control regulations upon Coronado Center or that area, the board to do that is not the Environmental Planning Commission of the City of Albuquerque acting under the zoning ordinance, but rather the local and state air quality control agencies which are in fact studying that very problem right now and if they conclude that any additional regulations are necessary, they will promulgate them and we will have to abide by them. That is the long and short of that."

Appellants rely heavily on an argument that they should have been granted standing, and that the lower court's failure to do so constitutes reversible error. In Blackhawk Heating & Plumbing Co. v. Driver, 140 U.S.App.D.C. 31, 433 F.2d 1137 at page 1141 (1970), the court addresses itself quite concisely to this very point, stating:

" * * * [T]he mere fact that a party has standing to sue does not entitle him to render uncertain for a prolonged period of time government contracts which

are vital to the functions performed by the sovereign. The recent decisions in this court and in the Supreme Court have served to eliminate the artificial barrier created by the concept of standing, but that does not mean that the traditional legitimate bars to frivolous lawsuits have also been abrogated.

"Rather than denying access to the courts to all litigants who make claims of arbitrary and capricious agency action on the ground that there will be unmeritorious suits from time to time—a process which also has the effect of barring plaintiffs who have legitimate grievances —we have determined that considerations of standing have nothing to do with the merits of the controversy and that the summary judgment procedure contemplated by Rule 56 of the Federal Rules of Civil Procedure will serve admirably to eliminate the frivolous lawsuits which might occasionally arise. * * *"

See also, Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), and Ballerina Pen Co. v. Kunzig, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970).

Blackhawk, supra, cites the case of Richard v. Credit Suisse, 242 N.Y. 346, 350, 152 N.E. 110, 111 (1926), in which Judge Cardozo quite properly points out the purpose of the motion for summary judgment, at page 1141 of 433 F.2d:

" 'The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial.' "

In the case before us, we are confronted with a formal issue of whether or not the plaintiffs should have been granted standing below, and general allegations of lack of notice of the EPC hearing and denial of plaintiffs' rights to prevent threatened air pollution, among others. The fact remains, however, that the EPC has no power to do any of the things that the plaintiffs desire,

and the Air Quality Control Act, supra, sets out the powers and procedures governing the issues in this case. The developers have complied with all of the zoning ordinances and statutory requirements to-date and, as they admit, they must continue to do so. We can find no genuine issue of law or fact involved in this case and hold that the developers were entitled to and correctly granted a summary judgment. See Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972).

The case of Dewey v. Clark, 88 U.S. App.D.C. 137, 180 F.2d 766 (1950), addresses itself to the type of issues involved here, and provides us with meaningful guidelines as set out at page 772:

"* * * There may be no genuine issue even though there is a formal issue. Neither a purely formal denial nor, in every case, general allegations, defeat summary judgment. On this point the cases decided by this court must rest on their own facts rather than upon a rigid rule that an assertion and a denial always preclude the granting of summary judgment. Those cases stand for the proposition that formalism is not a substitute for the necessity of a real or genuine issue. Whether the situation falls into the category of formalism or genuineness cannot be decided in the abstract; * * *."

Since the issues before us now were the same as those presented to the trial judge below and subjected to his careful scrutiny, we need not analyze them again in the abstract.

The content of this opinion reflects the decision of the court below that the power of the EPC simply was not available to sustain the plaintiffs' position. Consequently, other points raised on appeal need no further discussion. The order of the dismissal entered by the trial court is affirmed.

It is so ordered.

STEPHENSON and MARTINEZ, JJ., concur.