535 P.2d 1320

**DE VARGAS SAVINGS AND LOAN AS-
SOCIATION OF SANTA FE, New Mex-
ico, et al., Petitioners-Appellants,**

v.

**Snider CAMPBELL, Savings and Loan Super-
visor, Department of Banking, State of
New Mexico, Respondent-Appellee,**

**Los Alamos Building and Loan Association,
Intervenor-Appellee.**

**No. 10053.**

Supreme Court of New Mexico.

May 21, 1975.

Mitchell, Mitchell, Alley & Morrison, John A. Mitchell, Santa Fe, for petitioners-appellants.

David L. Norvell, Atty. Gen., Thomas Patrick Whelan, Asst. Atty. Gen., Olmsted & Cohen, Jeffrey L. Fornaciari, Santa Fe, for appellees.

## OPINION

McMANUS, Chief Justice.

This case involves the law of standing. The Savings and Loan Supervisor of the New Mexico Department of Banking (Supervisor) granted authority to the Los Alamos Building and Loan Association (LABL) to operate a branch office in the City and County of Santa Fe, New Mexico. Four savings and loan associations (appellants) located in Santa Fe petitioned the District Court of the First Judicial District, seeking judicial review of the Supervisor's order approving the branch office under § 48–15–133 of the Savings and Loan Act [§ 48–15–45 to 142, N.M.S.A. 1953 (Repl.Vol. 7, Supp.1972)]. That statute provides:

"A. Except as to matters covered by, or appealable under, section 13 [48–15–57] of the Savings and Loan Act [48–15–45 to 48–15–142], *any association or person aggrieved and directly affected* by a decision, order or regulation of, or failure to act by, the supervisor, may appeal to the district court of the county in which the person resides or maintains its principal office within thirty [30] days after issuance of the order or within thirty [30] days after it becomes reviewable. The filing of an appeal does not stay enforcement of an order unless the court orders a stay upon terms it deems proper. (Emphasis added.)

"B. The district court may affirm the order of the supervisor, may direct the supervisor to take action as affirmatively required by law or may reverse or modify the order of the supervisor if the court finds the order was:

"(1) issued pursuant to an unconstitutional statutory provision;

"(2) in excess of statutory authority;

"(3) arbitrary or capricious;

"(4) issued upon unlawful procedure; or

"(5) not supported by substantial evidence in the record.

"C. The decision of the district court may be appealed to the court of appeals as in other civil cases."

LABL was allowed to intervene and, together with the Supervisor, filed a motion to dismiss the petition for review. They claimed that appellants lacked standing under the foregoing statute seeking review of the order, because appellants were competitors with LABL and none of LABL's rights were affected. The district court granted the motion to dismiss in a memorandum decision based expressly on Ruidoso State Bank v. Brumlow, 81 N.M. 379, 467 P.2d 395 (1970). Petitioners then appealed to the Court of Appeals which in turn certified the case to this court under § 16–7–14(C), N.M.S.A.1953 (Repl.Vol. 4, 1970).

The specific question to be resolved is whether appellants are associations or persons "aggrieved and directly affected" by the order of the Supervisor within the purview of § 48–15–133, supra. The broader issue is whether or not New Mexico will continue to cling to the "legal interest" test of standing as enunciated in Ruidoso State Bank v. Brumlow, supra.

In Ruidoso State Bank, we held that a competing bank had no standing to contest the approval of a new bank by the Commissioner of Banking where the only injury suffered would result from "lawful competition." We there said that "[t]he true test is whether appellant's legal rights

have been invaded, not merely whether he has suffered any actual pecuniary loss or been deprived of any actual pecuniary benefit." 81 N.M. at 381, 467 P.2d at 397. See also, Tennessee Power Co. v. T.V.A., 306 U.S. 118, 137-139, 59 S.Ct. 366, 83 L. Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 479-481, 58 S.Ct. 300, 82 L.Ed. 374 (1938). The efficacy of this test has been denounced by legal scholars and expressly disclaimed by the United States Supreme Court. See Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

To deny standing to parties complaining of unlawful competition would be imminently unfair, as set out in Utton, Through a Glass Darkly: The Law of Standing to Challenge Governmental Action in New Mexico, 2 New Mexico L.Rev. 171, 177 (1972):

"In addition, if the very thing the complainant is challenging [is] the *lawfulness* of governmental action, to deny standing by saying the action complained of is lawful is to decide the case on the merits without allowing argument on the merits. If the action complained of is arguably unlawful, then a complaining party who is injured in fact should be allowed to argue the merits before the court and not to have access to judicial determination barred at the threshold of the courthouse."

The flaw in the "legal interest" test is that it requires a court to examine the merits of a case, while the purpose of the standing question is quite distinct—to protect against improper plaintiffs. See Data Processing Service, supra at 153, n. 1, 90 S.Ct. 827; Davis, Administrative Law Text, § 22.04 at 427 (3d ed. 1972). The distinction was also noted in Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968):

"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. * * *"

The unfortunate effect of the test in early federal cases, and in our own, was that:

"One who is seriously harmed by reviewable administrative action which is illegal or even unconstitutional is often denied judicial review on account of lack of standing. The law of standing is fundamentally artificial to the extent that one who is in fact harmed by administrative action is held to lack standing to challenge the legality of the action. * * *" 3 K. Davis, Administrative Law Treatise, § 22.01 at 210 (1958). cited in Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 873 (1970).

In a notable understatement, this court recently stated that "[t]he entire question of standing in New Mexico is somewhat in a state of confusion, and it is impossible to reconcile in principle the many decisions of this Court upon this question." State ex rel. Sego v. Kirkpatrick, 86 N.M. 359, 363, 524 P.2d 975, 979 (1974). See Utton, Law of Standing in New Mexico, supra. Unquestionably, there is a dire need for clarification of the standing concept to practically "insure that only those with a genuine and legitimate interest can participate in a proceeding." Office of Communication of United Church of Christ v. F. C. C., 123 U.S.App.D.C. 328, 359 F.2d 994, 1002 (1966).

Formerly, New Mexico looked to the federal law, specifically to Tennessee Power Co. v. T. V. A., supra, for guidance in determining questions of standing. However, the federal law was substantially liberalized in 1970 by the United States Supreme Court, and Tennessee Power Co. v. T. V. A., supra, was overruled. See Data Processing Service v. Camp, supra; Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Although these and other cases to be discussed hereinafter involved § 10, Administrative Procedure Act, 5 U.S.C. § 702 (1964 ed., Supp. IV), the general principles espoused in them are applicable to the broad question of stand-

ing to seek judicial review, be it specifically conferred by statute or otherwise.

Data Processing Service, supra, held that companies offering data processing service to the general business community had standing to seek judicial review of a ruling by the comptroller, that national banks could make data processing services available to other banks and to bank customers. Recognizing the inadequacy of the old legal interest test, the majority of the court adopted a new, and apparently double-barreled formula to determine standing. First, the party seeking relief must meet the "case" or "controversy" test under U.S.Const. art. III. Second, inquiry must be made as to "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830.

New Mexico has always required allegations of direct injury to the complainant to confer standing. See e. g., Hubbard Broadcasting, Inc. v. City of Albuquerque, supra; State ex rel. Overton v. State Tax Commissioners, 80 N.M. 780, 461 P.2d 913 (1969); Kuhn v. Burroughs, 66 N.M. 61, 342 P.2d 1086 (1959). However, it remains unclear as to the type or extent of injury that must be alleged.

■ Data Processing Service, supra, and two more recent United States Supreme Court decisions, United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), establish two principles in this respect with which we agree. Sierra Club points out that standing is not confined to those who show economic harm, as "aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." Id. at 734, 92 S.Ct. at

1366. Also, once the party seeking review alleges he himself is among the injured, the extent of injury can be very slight. See United States v. SCRAP, supra, 412 U.S. at 688, 93 S.Ct. 2405.

■ Problems arise with the second part of the test in Data Processing Service, supra, wherein the court is faced with the dilemma of determining the zone of interest to be protected or regulated. This zone may be apparent from the face of the statute or constitution, but more often than not the legislative history must be examined, a difficult or impossible task in New Mexico. Further, Data Processing Service, supra, seems to exclude all common law or equitable remedies. It seems fundamental that a plaintiff has standing to protect himself against injury as a result of unlawful governmental action, even in the absence of a controlling statute or constitutional provision.

In Scanwell Laboratories, Inc. v. Shaffer, supra, decided after Data Processing Service, supra, the court allowed standing to an unsuccessful contract bidder to challenge a decision of the Federal Aviation Authority on the basis that it was in violation of the relevant regulations. After thoroughly analyzing the standing question, the court held simply that "one who has a prospective beneficial relationship has standing to challenge the illegal grant of a contract to another." 424 F.2d at 870. In reasoning, that standing essentially requires only injury in fact, it was said:

"When the Congress has laid down guidelines to be followed in carrying out its mandate in a specific area, there should be some procedure whereby those who are injured by the arbitrary or capricious action of a governmental agency or official in ignoring those procedures can vindicate their very real interests, while at the same time furthering the public interest. These are the people who will really have the incentive to bring suit against illegal government action, and they are precisely the plaintiffs

to insure a genuine adversary case or controversy. * * *" 424 F.2d at 864.

"Regardless of the merits of plaintiff's case, it should be granted the right, if possible, to make a prima facie showing that the government's agents did in fact ignore the Congressional guidelines in the manner in which they handled the granting of the contracts. If there is arbitrary or capricious action on the part of any contracting official, who is going to complain about it, if not the party denied a contract as a result of the alleged illegal activity? It seems to us that it will be a very healthy check on governmental action to allow such suits, * * *." Id. at 866–867.

■ The reasoning of Scanwell is compelling. We hold that to attain standing in a suit arguing the unlawfulness of governmental action, the complainant must allege that he is injured in fact or is imminently threatened with injury, economically or otherwise. We therefore overrule Ruidoso State Bank v. Brumlow, supra, and its progenny, Southern Union Gas Co. v. New Mexico Pub. Serv. Com'n., 82 N.M. 405, 482 P.2d 913 (1971), and Hubbard Broadcasting, Inc. v. City of Albuquerque, 82 N.M. 164, 477 P.2d 602 (1970).

■ In this case, appellants clearly have standing to seek review of the supervisor's order as associations "aggrieved and directly affected" by the order. Appellants assert they will suffer from undue competitive injury if another branch is permitted in Santa Fe because there is not sufficient business and demand to assure and maintain the solvency of existing associations. They also assert another branch will not be to the advantage of the community. These claims are sufficient. In fact, the protection of these interests is explicitly recognized in § 48–15–61(A), N.M.S.A.1953 (Repl.Vol. 7, Supp.1972), which provides, in part:

"After hearing, the supervisor shall, in his discretion, grant or deny the application in writing. In exercising his discretion, the supervisor shall take into ac-

count, but not by way of limitation, such factors as the financial history and conditions of the applicant association, the adequacy of its capital structure, its future earning prospects and the general character of its management. Approval shall not be given until he is satisfied that:

"(1) establishment of the branch will meet the needs and promote the convenience and advantage of the community in which the business of the branch is to be conducted; and

"(2) the probable volume of business and reasonable public demand in the community are sufficient to assure and maintain the solvency of the branch and of the existing association or associations in the community."

■ If there is arbitrary and capricious action on the part of the supervisor in considering these matters, who could complain if not those directly affected by the allegedly illegal action? As said in Data Processing Service, supra, 397 U.S. at 157, 90 S.Ct. at 831.

"There is no presumption against judicial review and in favor of administrative absolution [citation omitted] unless that purpose is fairly discernible in the statutory scheme."

Here, we find no evidence in the act indicating the legislature intended to preclude judicial review. In fact, § 48–15–45, et seq., supra, indicates the contrary.

Proponents of a limited or no right of judicial review in administrative matters cite the theory that a multitude of cases will arise as a result. This does not seem to have so developed. Scanwell Laboratories, Inc. v. Shaffer, supra, at 872–873; Scenic Hudson Preservation Conf. v. Federal Power Com'n, 354 F.2d 608, 617 (2d Cir. 1965); Associated Industries v. Ickes, 134 F.2d 694, 707 (2d Cir. 1943). See also, Davis, Standing: Taxpayers and Others, 35 Univ. of Chicago L.Rev. 601, 634 (1968), and 3 K. Davis, Administrative Law Treatise, § 22.18 at 294 (1958).

The standard which we have adopted should grant standing to those having legitimate interests while allowing the ordinary summary judgment procedures to be used to penetrate the allegations of the pleadings to determine whether injury in fact actually exists. See United States v. SCRAP, supra, 412 U.S. at 689–690, 93 S. Ct. 2405 and Blackhawk Heating & Plumbing Co. v. Driver, 140 U.S.App.D.C. 31, 433 F.2d 1137 (1970), which is cited in our recent opinion in Hyder v. City of Albuquerque, 87 N.M. 215, 531 P.2d 949 (1974).

As we said in Goodman v. Brock, 83 N.M. 789, 793, 498 P.2d 676, 680 (1972) :

> "The procedures provided by Rule 56, supra, serve a worthwhile purpose in disposing of groundless claims, or claims which cannot be proved, without putting the parties and the courts through the trouble and expense of full blown, trials on these claims. [Citations omitted.]"

The cause is reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.