The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>February 14, 2024</u>

**No. A-1-CA-39295**

**TIFFANY SOUTH,**

  Plaintiff-Appellant,

v.

**POLICE CHIEF ISAAC LUJAN and POLICE CAPTAIN WILL DURAN, in their individual capacities,**

  Defendants-Appellees,

and

**MARY-ALICE BROGDON,**

  Defendant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Court Judge**

Law Office of George Geran
George T. Geran
Santa Fe, NM

for Appellant

Keleher & McLeod, P.A.
David W. Peterson
Thomas C. Bird
Albuquerque, NM

for Appellee Isaac Lujan

# OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1}     Plaintiff Tiffany South, a former police officer for the Sandia Pueblo Police Department, appeals the district court's decision to dismiss her claims for sexual harassment and retaliation pursuant to the New Mexico Human Rights Act (NMHRA), NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2023), against Defendant Isaac Lujan, then Sandia Pueblo Police Chief, and Defendant Will Duran, then Sandia Pueblo Police Captain.[1] Plaintiff argues that the district court erred in determining that Defendants cannot be held individually liable in aiding employment discrimination because Sandia Pueblo is not an employer subject to the NMHRA. We affirm.[2]

## BACKGROUND

{2}     Plaintiff filed a fourth amended complaint against, in relevant part, Defendant Lujan and Defendant Duran in their individual capacities. The complaint included statutory employment claims under the NMHRA, common law employment claims, and claims under the Fraud Against Taxpayers Act. Defendants filed a motion to

---

[1]The parties made claims to this Court once before. *See South v. Lujan*, 2014-NMCA-109, 336 P.3d 1000.

[2] Defendant Lujan argues that this Court does not have subject matter jurisdiction over the claims based on the infringement test or federal preemption by implication. We need not address the arguments given on our conclusion that the NMHRA does not apply to Plaintiff's claims.

dismiss for lack of subject matter jurisdiction, which the district court granted in part and denied in part. After the dismissal, only Plaintiff's claims for sexual harassment and retaliation pursuant to the NMHRA against Defendant Lujan and Defendant Duran remained.

{3}     Six months later, Defendant Lujan moved to dismiss Plaintiff's remaining claims, arguing that the infringement test precluded state court jurisdiction over Plaintiff's claims, that the NMHRA did not apply because Tribal Nations are not employers under the NMHRA, and that the claims were untimely. After the completion of briefing and without a hearing, the district court granted the motion. Although the district court made findings of fact regarding the infringement test, it did not reach Plaintiff's claims regarding subject matter jurisdiction under that test because it determined that the NMHRA did not provide Plaintiff a cause of action. The district court determined that the NMHRA only allows actions against individual persons that aid an employer in discriminatory conduct, and Plaintiff's cause of action relied on defining Sandia Pueblo as an employer under the NMHRA. It went on to conclude that Plaintiff failed to state a claim because the NMHRA does not include Tribal Nations, including Sandia Pueblo, within its definition of employer. Plaintiff appeals.

## DISCUSSION

## Tribal Nations Are Not Employers as Defined by the NMHRA

{4}      Plaintiff argues that the district court erred in determining that a Tribal Nation is not an employer pursuant to the NMHRA. The question before us is a legal one that requires us to interpret a statute, which we review de novo. *See Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806.

{5}      Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, [appellate courts] look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 14, 492 P.3d 586. Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted).

{6}      Pursuant to the NMHRA, it is unlawful discriminatory conduct for an employer to discriminate in conditions of employment against any person otherwise qualified on the basis of sex and other listed protected characteristics. Section 28-1-

7(A).[3] An unlawful discriminatory act pursuant to Section 28-1-7(A) requires the action of an employer. An "employer" is defined as "any person employing four or more persons and any person acting for an employer." Section 28-1-2(B).[4] A "person" is defined as "one or more individuals, a partnership, association, organization, corporation, joint venture, legal representative, trustees, receivers, or the state and all of its political subdivisions." Section 27-1-2(A). Under the plain language of the definition, the concept of a "person" does not include a Tribal Nation—or any government besides our state government. *Id.*; *see High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (noting that when presented with a question of statutory construction, "the plain language of a statute is the primary indicator of legislative intent" and we "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent") (internal quotation marks and citations omitted)).

{7}     Plaintiff argues that individual persons like Defendant Lujan and Defendant Duran—aside from employers—can be held liable under the NMHRA. Section 28-

---

[3]We acknowledge that the 2004 version of Section 28-1-7 is applicable to Plaintiff's claims. The 2023 amendment of Section 28-1-7(A) provides protections for more classes of people but otherwise remains the same. *Compare* § 28-1-7(A) (2004), *with* § 28-1-7(A). We reference the most recent version of the statute for clarity.

[4]Similarly to above, the 2007 version of Section 28-1-2 is applicable to Plaintiff's claims. The 2023 amendment of Section 28-1-2 includes the same definitions of "person" and "employer." *Compare* § 28-1-1(A), (B) (2007), *with* § 28-1-2(A), (B). We reference the most recent version of the statute for clarity.

1-7(I)(1) states that it is an unlawful discriminatory practice for "any person or employer to[] aid, abet, incite, compel or coerce the doing of any unlawful discriminatory practice or to attempt to do so." While an individual person can be liable pursuant to this subsection, it requires "the doing of any unlawful discriminatory practice, or attempt to do so," *id.*, which, in this case, necessarily requires the act of an employer pursuant to Section 28-1-7(A). Thus, Defendant Lujan and Defendant Duran—named as persons in their individual capacities—cannot be subject to the NMHRA if their employer Sandia Pueblo cannot be considered an employer under to the NMHRA.

{8}    Our review of case law demonstrates that whether "person" includes governments—like the United States government, our state government, municipal governments, and Tribal Nations—depends on the language included in the statute. As noted by Defendant Lujan, our plain language interpretation of the NMHRA is in line with those cases. In *Stansell v. N.M. Lottery*, 2009-NMCA-062, ¶¶ 1, 2, 146 N.M. 417, 211 P.3d 214, this Court had to determine if the New Mexico Lottery (the Lottery), a governmental instrumentality, was a "person" under the Unfair Practices Act (the UPA). The UPA at that time defined "person" as "'natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates.'" *Id.* ¶ 5 (quoting NMSA 1978, § 57-12-2(A) (2003, amended 2019)). Similarly to our conclusion here, the Court

7

determined that "[s]ince the Legislature did not include any governmental body or the Lottery within the UPA's definition of 'person,' the Lottery [was] not subject to the UPA." *Id.* ¶ 12.

{9}     Similarly, our Supreme Court reviewed the Public Utility Act's applicability to the federal government when "person," was defined as "individuals, firms, partnerships, companies, rural electric co-operatives, corporations, and lessees, trustees or receivers appointed by any court whatsoever. It shall not mean any municipality as herein defined unless such municipality shall have elected to come within the terms of the Public Utility Act." *S. Union Gas Co. v. N.M. Pub. Serv. Comm'n*, 1971-NMSC-035, ¶¶ 1-3, 82 N.M. 405, 482 P.2d 913 (internal quotation marks and citation omitted), *overruled on other grounds by De Vargas Savings & Loan Ass'n v. Campbell*, 1975-NMSC-026, ¶ 15, 87 N.M. 469, 535 P.2d 1320. Our Supreme Court noted that "[w]hen the [L]egislature has wanted to include sovereigns or other governmental bodies in its statutes, it has known how to do so," *id.* ¶ 7, before determining that the Legislature "did not see fit to include or even mention the United States or governmental agencies." *Id.* ¶ 8.

{10}     In *Wolinsky v. New Mexico Corrections Department*, 2018-NMCA-071, ¶ 1, 429 P.3d 991, this Court assessed the applicability of the Fair Pay for Women Act (the FPWA) to the state and its agencies. Similarly to the NMHRA, the FPWA prohibited an employer from discrimination on the basis of sex, *id.* ¶ 11 (citing

NMSA 1978, § 28-23-3(A) (2013)), and defined "employer" as "'a person employing four or more employees and any person acting for an employer,'" *id.* (quoting NMSA 1978, 28-23-2(E) (2013)). The FPWA did not define "person." *Id.* Given the lack of an internal definition, this Court determined that the Uniform Statute and Rule Construction Act, which defined person as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture or any legal or commercial entity," applied. *Id.* ¶¶ 12, 13 (internal quotation marks and citations omitted). It then concluded the state was a legal entity, so it was a person under the FPWA. *Id.* ¶ 13. In contrast to *Wolinsky*, the NMHRA provides an internal definition of "person," and it does not include Tribal Nations or legal entities.

{11} In *Town of Mesilla v. City of Las Cruces*, 1995-NMCA-058, ¶¶ 6, 7, 120 N.M. 69, 898 P.2d 121, this Court had to determine if the town of Mesilla could be a "person aggrieved" under NMSA 1978, Section 3-21-9(A) (1965, amended 1999)—and thus eligible to challenge a zoning decision—when the statute did not define person. This Court determined that the term "person" in the statute included municipalities. *Mesilla*, 1995-NMCA-058, ¶¶ 9-11. This Court reached its conclusion on two grounds. First, we noted New Mexico case law that viewed the word "person"—when not defined specifically—is meant to be construed as "'inclusive, rather than exclusive.'" *Id.* ¶ 9 (quoting *Gonzales v. Oil, Chem & Atomic*

*Workers Int'l United*, 1966-NMSC-211, ¶ 30, 77 N.M. 61, 419 P.2d 257). Second, we noted that as a general matter other jurisdictions had "considered municipalities to be persons for the purpose of challenging zoning decisions of neighboring municipalities." *Id.* ¶ 10. Here, the NMHRA includes a definition of "person" that cannot be construed to include Tribal Nations.

{12}     Plaintiff raises several arguments as to why we ought to look beyond the plain language of the statute. Plaintiff first contends that we should look to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e because New Mexico appellate courts have previously looked to Title VII "adjudication for guidance in interpreting the NMHRA." *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58; *Rodriguez v. N.M. Dep't of Workforce Sols.*, 2012-NMCA-059, ¶ 14, 278 P.3d 1047 (same). Plaintiff argues that because Title VII includes plain language exemptions for Indian tribes, § 2000e(b), and the NMHRA exemptions—which we must interpret strictly—do not include Tribal Nations, the exemptions were considered and omitted by the Legislature.

{13}     Though we agree that Title VII can be used for guidance when necessary, it is not needed here because the plain language of the NMHRA is clear. *See Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787 ("Our courts have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent."). Moreover, as Defendant Lujan notes, Title VII defines

10

"person" to include "governments," but excludes specific governments, including "Indian tribes," from the definition of employer. § 2000e(a), (b). Thus, the federal approach excludes Indian tribes, which is different from the NMHRA, which never includes Tribal Nations. *Compare* § 2000e(a), (b), *with* § 28-1-7(A), *and* § 28-1-9 (exemptions). Thus, looking to the federal statute in context for guidance demonstrates that the NMHRA's failure to exempt Tribal Nations does not indicate a legislative intent to make Tribal Nations liable for unlawful discriminatory conduct.

{14}    Plaintiff next argues that Tribal Nations are subject to the NMHRA by its inclusion of the undefined terms "association" and "organization" in the definition of "person." *See* § 28-1-2(A) (including "association" and "organization" in the definition of "person"); *Association*, *Black's Law Dictionary* (11th ed. 2019) (defining "association" as "[a]n unincorporated organization that is not a legal entity separate from the persons who compose it"); *Organization*, *Black's Law Dictionary* (11th ed. 2019) (defining "organization" as "[a] group that has formed for a particular purpose"). This argument—based on dictionary definitions of each term—ignores the nature of Tribal Nations as quasi-sovereign entities. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 (1978) (noting that Tribal Nations "remain quasi-sovereign nations"). To deem Tribal Nations as "associations" or "organizations" would be akin to calling the state, the county, or a city government

an organization or association. It would be unreasonable to do so. *See Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320 ("A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." (internal quotation marks and citations omitted)).

{15} Plaintiff also claims that the NMHRA is a remedial statute that must be interpreted liberally to implement its purpose. *See Herald v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-104, ¶ 25, 357 P.3d 438 ("[T]he language of remedial statutes, including the [NM]HRA[,] . . . must be liberally construed."). She goes on to argue that such a liberal interpretation requires this Court to "notice the all-inclusive nature of the NMHRA's definition of 'person' . . . and expand that all-inclusive definition consistent with the remedial nature of the NMHRA, clearly including [T]ribal individuals, as well as every other type of kind of individual, within its ambit of liability." Plaintiff essentially asks this Court to read Tribal Nations—and every other type of individual—into the definition of "person" of the NMHRA. Nothing in the statutory language in Section 28-1-2(A) indicates that the Legislature intended to include Tribal Nations in the definition of person, so we decline to do so. *See High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5 (noting we "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)).

{16} Because we conclude that the definition of "person" in Section 28-1-2(A) does not include Tribal Nations, we affirm the district court's decision to dismiss Plaintiff's claims.

**CONCLUSION**

{17} We affirm.

{18} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge, retired, Sitting by designation.**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JANE B. YOHALEM, Judge**

13