2005-NMCA-077

114 P.3d 389

**Walter S. HENDERSON, Jr. and Bertha L. Henderson, Husband and Wife, Plaintiffs–Appellants,**

v.

**CITY OF TUCUMCARI, Defendant–Appellee.**

**No. 24,660.**

Court of Appeals of New Mexico.

April 20, 2005.

Certiorari Denied, No. 29,217, June 6, 2005.

Walter S. Henderson, Jr., Tucumcari, Pro Se Appellants.

Emily A. Franke, Carlos G. Martinez, Butt Thornton & Baehr, PC, Albuquerque, for Appellee.

## OPINION

WECHSLER, J.

{1} In this appeal, we address NMSA 1978, § 3–18–5 (1977), which allows municipalities to deal with ruins, rubbish, wreckage or debris, by requiring the owner to clean up the property. Under the statute, if the owner fails to ameliorate any problem, the municipality may do so and obtain a lien against the property. *See* § 3–18–5(F)(3). The City of Tucumcari was not satisfied with Plaintiffs' efforts and cleaned up Plaintiffs' property. Plaintiffs sued, contending that the City crew was overzealous and removed everything, including cars Plaintiffs contend are valuable because they are "antique," "collectable," "vintage," or "restorable." The district court dismissed Plaintiffs' complaint for failure to state a claim under Rule 1–012(B)(6) NMRA, ruling that Plaintiffs failed to comply with statutory deadlines. We address whether the failure to follow the time deadlines in Section 3–18–5 requires dismissal. We also address issues concerning the statute of limitations under the Tort Claims Act, NMSA 1978, §§ 41–4–1 to 41–4–27 (1976, as amended through 2004) (TCA). We reverse, holding that the time deadlines in Section 3–18–5 do not apply to this action and that, on the current state of the record, Plaintiffs' lawsuit is not barred by the statute of limitations.

*Background*

{2} Section 3–18–5(A) provides:

Whenever any building or structure is ruined, damaged and dilapidated, or any premise is covered with ruins, rubbish, wreckage or debris, the governing body of a municipality may by resolution find that the ruined, damaged and dilapidated building, structure or premise is a menace to the public comfort, health, peace or safety and require the removal from the municipality of the building, structure, ruins, rubbish, wreckage or debris.

A copy of the resolution must be served on the owner or occupant of the property or an agent (of the owner). *See* § 3–18–5(B). The owner then has ten days either to begin ameliorating the problem or to file a written objection to the resolution with the municipal clerk, asking for a hearing. *See* § 3–18–5(C). If an objection is filed, the governing body must set a hearing and act on the objection. *See* § 3–18–5(D)(1). "Any person aggrieved by the determination of the governing body may appeal to the district court . . . within twenty days after the determination." Section 3–18–5(E)(2). If the owner does not timely begin ameliorating the problem, the governing body may do the work and obtain a lien against the property for the "reasonable cost" of doing the work, and may foreclose the lien. *See* § 3–18–5(F)(3). The statute requires that the premises be left in a

"clean, level and safe condition, suitable for further occupancy or construction." *See* § 3–18–5(H).

{3} Plaintiffs owned an automobile salvage business. Their home, which was also on the property, burned down. The City, under the aegis of Section 3–18–5, passed a resolution on March 23, 2000, declaring the property to be a menace. Plaintiffs did not dispute the City's determination or the necessity of cleaning up the property. Plaintiffs made some efforts to comply, but assert that the City was not satisfied with their efforts.

{4} Plaintiffs contend that they had salvaged materials from the fire-damaged building that could be reused. They also contend that sidewalks, a cement slab floor, and a gas pipeline from a propane tank remained. Plaintiffs claim that during the last week of July and the first week of August 2001, approximately sixteen months after the resolution, the City brought dump trucks and a large tractor with a front-end loader to the property. They claim that the City then removed everything, including topsoil, leaving nothing behind.

{5} The list of removed items is lengthy. It includes personal property such as hoods from 1955–57 pickup trucks, one hundred hubcaps, ten axles from Model T Fords, and a wide variety of other, similar items. Plaintiffs contend that the City removed property worth over $69,000.

{6} Plaintiffs posit the question on appeal as "whether a municipality can take top soil, usable improvements or valuable merchandise along with wreckage, ruins, rubbish or debris." Their view is that "[t]he law giving a city power to do a condemnation and then remove ruins, wreckage, rubbish or debris does not remove the duty to use care in doing so." The City likely believes that having declared the entire property a menace, it had the right to remove all of the items. We do not determine the merits of Plaintiffs' issue, nor do we address any defenses or other potential arguments the City may have. Although the parties briefed the issue of immunity under the TCA, the issue is premature for decision in this appeal of the grant of a motion to dismiss on unrelated grounds.

*Standard of Review*

{7} A motion to dismiss for failure to state a claim under Rule 1–012(B)(6), "tests the legal sufficiency of the complaint, accepting all well-pleaded factual allegations as true." *Derringer v. State*, 2003–NMCA–073, ¶ 5, 133 N.M. 721, 68 P.3d 961. Dismissal is warranted when the law does not support a plaintiff's claim under any set of facts subject to proof. *Id.* We review a district court's ruling on Rule 1–012(B)(6) motions de novo. *Derringer*, 2003–NMCA–073, ¶ 5, 133 N.M. 721, 68 P.3d 961. The application of the TCA is also reviewed de novo. *Godwin v. Mem'l Med. Ctr.*, 2001–NMCA–033, ¶ 23, 130 N.M. 434, 25 P.3d 273.

*Time Deadlines Under Section 3–18–5*

{8} The City argues that Plaintiffs' district court action did not follow the time deadlines in Section 3–18–5. The City believes that, after Plaintiffs were unhappy with the remediation project, Section 3–18–5 provided Plaintiffs' sole recourse and required them to follow the short time deadlines in the statute. Instead, Plaintiffs did not file their lawsuit for approximately two years after the project. The City also argues that Plaintiffs were late because they did not file their lawsuit within the two-year limitations period in the TCA. The district court's order reflects that it dismissed the case because Plaintiffs "failed to comply with any of the deadlines provided in the New Mexico Statutes."

{9} In interpreting Section 3–18–5, we must determine legislative intent. *See Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 (1996) (stating that when interpreting statutes, a reviewing court must seek to give effect to the intent of the legislature). Our starting point is the plain language of the statute. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994) (noting the general rule that if the meaning of a statute is clear it must be applied as written).

{10} The statute is easily understood and its purpose is clear. It deals with blighted or hazardous property and gives the owner the first opportunity to address any problems. *See* § 3–18–5(A),(B). If the owner does not comply with a governing body's request to

ameliorate the problems, the statute allows the governing body to address the problem. *See* § 3–18–5(F). It provides for a process, allowing the owner to request a hearing on the governing body's resolution declaring the property to be a menace to the public comfort, health, peace, or safety. *See* § 3–18–5(A), (D)(1). After that hearing, any aggrieved person may appeal the governing body's "determination" to the district court within twenty days. *See* § 3–18–5(E)(2).

{11} Reading Sections 3–18–5(A), (B), and (C) together, it is obvious that the first step in the process that must be appealed to the governing body within ten days is a governing body's resolution declaring a property to be a menace. The governing body then must set a hearing and "determine if its resolution should be enforced or rescinded." Section 3–18–5(D)(1), (3). The governing body's "determination" may then be appealed to the district court within twenty days. Section 3–18–5(E)(2). Consequently, the time limits in Section 3–18–5 apply to a limited and well-defined set of circumstances: the adoption of the initial resolution declaring the property to present a blight or hazard, and the governing body's subsequent "determination," after a hearing, on the correctness of the initial resolution. In this narrow context, the statute's procedures, and short time deadlines, make perfect sense.

{12} Because Plaintiffs did not contest the City's resolution, there was no reason to follow the procedure in Section 3–18–5. The avenue provided for Plaintiffs in Section 3–18–5 was not the sole and exclusive avenue for any problems or complaints Plaintiffs had about the City's actions, regardless of the time of the actions or the type of problems involved. The decisions made by workers during the remediation project do not constitute the "resolution" mentioned in Sections 3–18–5(A), (B), (C), or (D). Nor do the decisions made by the workers during the remediation project constitute a "determination," as that term is narrowly used in Section 3–18–5(E) or (F). Plaintiffs' lawsuit is one of negligence, which is not the subject of Section 3–18–5. Consequently, the time deadlines in Section 3–18–5 are inapplicable, Plaintiffs were not late, and they could properly file their action in district court, where negligence claims are commonly heard.

{13} Plaintiffs' lawsuit also claimed that the amount of the lien imposed by the City was unreasonable and overcharged by $2010. Plaintiffs complained that the City charged them for work that was done on adjoining property they did not own. They complain they should not have been charged for work performed in taking their valuable property that they assert should not have been taken. They also complain that the City had not charged based on the actual cost of doing the work, but rather on the customary rental value of the machinery used.

{14} Once again, we disagree that the City's setting of the amount of the lien is a "resolution" or "determination" that is governed by the time limits in Section 3–18–5. Section 3–18–5(F)(3) allows for a lien but does not discuss any procedures for dealing with a claim that a lien is unreasonable or incorrectly calculated. The City argues that Section 3–18–5 provides the sole remedy because Plaintiffs could contest the amount of the lien if and when the City sought to foreclose on the property under Section 3–18–5(F)(3), following the procedures of the statutory foreclosure process of NMSA 1978, §§ 3–36–4 to 3–36–5 (1965) and § 3–36–6 (1977). However, the procedures of Sections 3–36–4 through 3–36–6, by which a city may attach and foreclose upon a lien, do not provide a procedure to challenge the amount of the lien imposed. Nothing in these procedures indicates that the legislature intended that property owners should have to wait for foreclosure before being able to address alleged problems with a lien. We agree with Plaintiffs that they can contest the amount of the lien in the district court action, especially because the lien issues are linked with the negligence issues.

*Statute of Limitations*

{15} Plaintiffs filed their lawsuit on July 31, 2003. The City argues that the lawsuit was late because it was filed more than two years after the "occurrence" resulting in damage. *See* § 41–4–15(A) (requiring lawsuits brought under the TCA to be "commenced within two years of date after the occurrence resulting in loss, injury or death"). Plaintiffs' complaint alleges that the work took place in the last week of July

and into the first week of August 2001. The City does not appear to dispute this factual claim, but argues that the clean-up work was "commenced" in the last week of July 2001 and therefore the trigger for the statute of limitations was the date the work began and no other date.

{16} We do not agree with the City's argument. Under the TCA, the statute of limitations begins to run when the injury manifests itself and is ascertainable. *See Long v. Weaver,* 105 N.M. 188, 191, 730 P.2d 491, 494 (Ct.App.1986). Plaintiffs' allegation about the time the work was performed and when the time the injury manifested itself presents a factual matter that must be resolved. *See id.* at 191–92, 730 P.2d at 494–95; *Eoff v. Forrest,* 109 N.M. 695, 699, 789 P.2d 1262, 1266 (1990) (indicating that summary judgment is not appropriate when genuine issues of fact are present). The record does not suggest that the court resolved these factual issues. If Plaintiffs are correct that the work and its alleged damage continued into August, Plaintiffs' lawsuit may have been timely filed. *See Aragon & McCoy v. Albuquerque Nat'l Bank,* 99 N.M. 420, 424, 659 P.2d 306, 310 (1983) (stating that a cause of action may sometimes accrue on several different dates, and it is the last event that starts the statute of limitations period running). It is not clear whether the court dismissed this action based on a failure to follow the time deadlines in Section 3–18–5 or the statute of limitations, or both. However, if the court based its ruling on the failure to comply with the statute of limitations, its dismissal would be inappropriate on the current state of the record.

*Conclusion*

{17} We conclude that Plaintiffs' lawsuit is timely. We reverse and remand for further proceedings.

{18} **IT IS SO ORDERED.**

BUSTAMANTE, C.J. and SUTIN, J., concur.