IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-062

Filing Date: May 14, 2009

Docket No. 28,241

RANDY STANSELL, KENNETH NUTT,
AND CHRIS CANNING, Individually,
And On Behalf of Others, Similarly Situated,

    Plaintiffs-Appellants,

v.

THE NEW MEXICO LOTTERY,

    Defendant-Appellee.

Consolidated with

Docket No. 28,505

RANDY STANSELL, KENNETH NUTT,
AND CHRIS CANNING, Individually,
And On Behalf of Others, Similarly Situated,

    Plaintiffs-Appellees,

v.

THE NEW MEXICO LOTTERY,

    Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge

Warren F. Frost, P.C.
Warren F. Frost
Logan, NM

for Appellants/Appellees

1

Conklin, Jenke, Woodcock & Ziegler, P.C.
Robert C. Conklin
Jacqueline M. Woodcock
John K. Ziegler
Albuquerque, NM

for Appellee/Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**     Plaintiffs Randy Stansell, Kenneth Nutt, and Chris Canning appeal the district court order dismissing their Unfair Practices Act claims, and the New Mexico Lottery (the Lottery) appeals the district court order denying its motion for attorney fees. We conclude that the Lottery is not a "person" under the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2007). We further conclude that Plaintiffs' complaint was not groundless or frivolous. We affirm on both appeals.

**BACKGROUND**

**{2}**     The Lottery is a governmental instrumentality established by the passage of the New Mexico Lottery Act (NMLA), NMSA 1978, §§ 6-24-1 to -34 (1995, as amended through 2007), to provide entertainment for the public and raise funds for tuition. *See* §§ 6-24-3, 6-24-5, 6-24-23. Plaintiffs filed a complaint with the district court, arguing that the "Lottery established a practice of prematurely pulling games from the market that still had substantial cash prizes available." Only one issue from Plaintiffs' complaint remains: whether the Lottery engaged in unfair and deceptive trade practices under the UPA. Plaintiffs argue that the Lottery is a "person" as defined by the UPA because, although it is a "governmental instrumentality" under Section 6-24-5(A), it operates in such a unique fashion that it should be deemed a corporation or company.

**{3}**     The Lottery filed a motion to dismiss for failure to state a claim, arguing that the UPA does not apply to the Lottery because it is not a "person" as defined therein. *See* Rule 1-012(B)(6) NMRA. Rather than file a response, Plaintiffs filed a motion to hold the motion to dismiss in abeyance pending discovery. The Lottery then filed a motion to dismiss based on Plaintiffs' failure to respond. *See* Rule 1-007.1(D) NMRA. The district court granted the Lottery's motion to dismiss for failure to state a claim, finding that the plain language of the UPA precluded suit against the Lottery; denied Plaintiffs' motion to hold dismissal in abeyance; and denied the Lottery's motion to dismiss for failure to respond. Thereafter, the Lottery filed a motion for attorney fees, arguing that Plaintiffs' suit was groundless and frivolous. The district court denied this motion. Plaintiffs appeal from the district court order dismissing the case, and the Lottery appeals from the district court order denying attorney fees. We consolidated the appeals on our own motion.

2

**RULE 1-012(B)(6) MOTION TO DISMISS**

**{4}**     We review a Rule 1-012(B)(6) motion to dismiss de novo and determine the legal sufficiency of a plaintiff's complaint. *Henderson v. City of Tucumcari*, 2005-NMCA-077, ¶ 7, 137 N.M. 709, 114 P.3d 389. We accept all well-pleaded factual allegations as true and determine whether the plaintiff could "prevail under any state of facts provable under the claim." *Saylor v. Valles*, 2003-NMCA-037, ¶ 6, 133 N.M. 432, 63 P.3d 1152. "Dismissal is warranted when the law does not support a plaintiff's claim under any set of facts subject to proof." *Henderson*, 2005-NMCA-077, ¶ 7.

**{5}**     Plaintiffs allege that the Lottery "began a practice of prematurely pulling scratch off games from the market while they had substantial cash prizes still available," which they claim is a prohibited practice under the UPA. *See* § 57-12-3. The Lottery's motion to dismiss states that, because the Lottery is not a "person" as defined by the UPA, Plaintiffs' claims should be dismissed. Section 57-12-2(A) of the UPA defines a "person" to include "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates." Plaintiffs contend that the Lottery is a "person" under the UPA because it operates as a corporation or company. Specifically, Plaintiffs point to portions of the NMLA in which the Legislature assigned corporate-like functions to the Lottery, such as (1) organizing the Lottery as a "business enterprise separate from state government, without need for state revenues or resources," Section 6-24-2(C); (2) establishing duties of the Lottery's board of directors with a "private-sector perspective of a large marketing enterprise[, which] shall make every effort to exercise sound and prudent business judgment in its management and promotion of the [L]ottery," Section 6-24-7; and (3) requiring that the Lottery be "self-sustaining and self-funded," such that no state funds are used by the Lottery, Section 6-24-25.

**{6}**     Plaintiffs further rely on an unpublished decision, *Lucero v. N.M. Lottery*, No. CIV 07-499 JCH/RLP (D.N.M. July 7, 2008), *available at* http://www.nmcourt.fed.us/web/DCDOCS/dcindex.htm1 (follow "Opinions" hyperlink; then search "Case Number" for "CV 07-499"; then follow "view" hyperlink for #126), in which the United States District Court of New Mexico expounded upon the autonomy of the Lottery. Plaintiffs conclude that "[t]here can be little question from a review of the [NMLA] and [the *Lucero*] analysis, that the Lottery is in all aspects set up to be an ongoing commercial business enterprise designed to maximize profits like any other corporation or company." We disagree.

**{7}**     We interpret applicable statutes de novo and seek to effectuate legislative intent. *See Moongate Water Co. v. Doña Ana Mut. Domestic Water Consumers Ass'n* (*Moongate*), 2008-NMCA-143, ¶¶ 4, 32, 145 N.M. 140, 194 P.3d 755. "We must give a statute its literal reading if the words used are plain and unambiguous, provided such a construction would not lead to an injustice, absurdity or contradiction." *Albuquerque Redi-Mix, Inc. v. Scottsdale Ins. Co.*, 2007-NMSC-051, ¶ 6, 142 N.M. 527, 168 P.3d 99 (internal quotation

marks and citation omitted). "However, all parts of a statute must be read together to ascertain legislative intent. We are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 769, 918 P.2d 350, 355 (1996) (citation omitted).

**{8}** Although the Legislature granted the Lottery a variety of attributes that are corporate in nature, the Legislature nonetheless established the Lottery as "a public body, politic and corporate, separate and apart from the state, constituting a governmental instrumentality." Section 6-24-5(A). In addition, the Legislature assigned many public or state functions to the Lottery, including: (1) the Lottery's purpose is public—to establish and conduct a state lottery in order to provide entertainment for New Mexico citizens and maximize revenues for the "lottery tuition fund" without increasing taxes or using other state revenue, *see* §§ 6-24-3, 6-24-23; (2) the Lottery's board is "appointed by the governor with the advice and consent of the senate," Section 6-24-5(B); (3) the Lottery's operations are subject to the legislative finance committee's oversight, Section 6-24-9(A); and (4) the Lottery's chief executive officer must report revenues and expenses quarterly to the governor and the legislative finance committee, Section 6-24-10(B)(8).

**{9}** Further, a review of the NMLA reveals that there are numerous corporate activities that the Legislature refrained from assigning to the Lottery. Among the many differences that can be found between the Lottery and corporations, we note that the Lottery was not formed under bylaws and articles of incorporation, it is not owned by shareholders and cannot be sold, it does not pay taxes, its activities and purpose have been assigned by the Legislature, and it must return all profits to the public tuition fund. *See generally* §§ 6-24-6 to -12.

**{10}** The Legislature made its intent clear that the Lottery is a governmental instrumentality, empowered with the authority to maneuver in a corporate environment to accomplish its public purpose—financing the tuition fund. *See* §§ 6-24-3, 6-24-5(A), 6-24-23. Moreover, the Legislature identified a desire that the Lottery provide funds without drawing on other state assets. *See* §§ 6-24-2(C), 6-24-3(B). As explicitly stated in the NMLA, "the most desirable, efficient and effective mechanism for operation of a state lottery is an independent lottery authority organized as a business enterprise separate from state government, without need for state revenues or resources and subject to oversight, audit and accountability by public officials and agencies." Section 6-24-2(C). The NMLA directs the Lottery to operate as a business enterprise so as not to draw on other public resources, furthering the Legislature's intent that the tuition fund be financed with the least strain on the state's budget. *See id.* This intent does not, however, establish the Lottery as an actual corporation.

**{11}** We also consider it significant that the Legislature defined the Lottery as "a public body, politic and corporate" in Section 6-24-5(A). In *Moongate*, this Court considered whether an association organized under the Sanitary Projects Act (SPA), NMSA 1978, §§ 3-29-1 to -21 (1965, as amended through 2006), was a corporate entity or a special function

4

governmental unit so as to be immune from damage liability under the New Mexico Antitrust Act, NMSA 1978, §§ 57-1-1 to -19 (1891, as amended through 1995). *Moongate*, 2008-NMCA-143, ¶ 1. This Court interpreted the phrase "public body corporate" in the SPA as establishing legislative intent that the entities described are units of government and not corporations or businesses. *See id.* ¶ 23 (internal quotation marks omitted). As in *Moongate*, the legislative reference to the Lottery in the NMLA as a "public body, politic and corporate" further demonstrates the Legislature's intent that the Lottery be an "instrumentalit[y] of the government." *See id.* Reading all parts of the NMLA together to ascertain legislative intent "and constru[ing] each part in connection with every other part to produce a harmonious whole," we must conclude that the Legislature intended to create a "governmental instrumentality," albeit one with the authority to function in a corporate environment. *Key*, 121 N.M. at 769, 918 P.2d at 355.

**{12}**   Further, although the UPA's definition of "person" does not explicitly exclude any state entity, it also does not include one. *See* § 57-12-2(A). Our Supreme Court has stated that "[w]hen the [L]egislature has wanted to include . . . governmental bodies in its statutes, it has known how to do so." *S. Union Gas Co. v. N.M. Pub. Serv. Comm'n*, 82 N.M. 405, 406, 482 P.2d 913, 914 (1971) (citing numerous statutes that have explicitly included a governmental body), *overruled on other grounds by De Vargas Sav. & Loan Ass'n v. Campbell*, 87 N.M. 469, 535 P.2d 1320 (1975); *see, e.g.*, § 57-1-1.2 (defining "person" to include "governmental or other legal entity"). Since the Legislature did not include any governmental body or the Lottery within the UPA's definition of "person," the Lottery is not subject to the UPA.

**{13}**   Finally, Plaintiffs' reliance on *Lucero* is misplaced. *Lucero* decided whether the Lottery is an "arm of the state" or a political subdivision for purposes of 42 U.S.C. § 1983 (1996). *Lucero*, No. CIV 07-499, at 1. At the end of a lengthy discussion on the Lottery's autonomy, in which the court defined the Lottery as "an independent agency" with a "private-sector perspective of a large marketing enterprise," the court concluded that the Lottery is an "independent political subdivision" of the state. *See id.* at 6, 8, 12 (internal quotation marks and citation omitted). Although the analysis in *Lucero* removed the Lottery from the purview of § 1983 claims in that case, *see Lucero*, No. CIV 07-499, at 12, it does not follow that the Lottery, even with a "private-sector perspective," is a corporate entity and not a governmental instrumentality or political subdivision.

**ATTORNEY FEES**

**{14}**   We next address whether the district court properly denied the Lottery's motion for attorney fees based on the Lottery's assertion that Plaintiffs' claims were groundless. We review a denial of an "award of attorney fees for an abuse of discretion." *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted). "A trial court abuses its discretion when its decision is contrary to logic and reason." *Roselli v. Rio Cmtys. Serv. Station, Inc.*, 109 N.M. 509, 512, 787 P.2d 428, 431 (1990).

**{15}** The Lottery asserts that its motion for attorney fees was filed "[b]ased on the dismissal of the UPA claims" and that Plaintiffs' claims "were groundless based on the plain language of the UPA and case law interpreting similar statutory provisions." The Lottery further argues that Plaintiffs' arguments were made in bad faith because Plaintiffs did not perform "further research concerning the case or statute to determine if their argument has legal support"—which the Lottery claims is required by *In re Richards*, 1999-NMSC-030, ¶¶ 9-12, 127 N.M. 716, 986 P.2d 1117—resulting in Plaintiffs selectively referencing portions of the NMLA and failing to present case law in support of their argument. The Lottery also asserts that Plaintiffs made their claims in bad faith because they ignored black letter law that states, "absent express words to the contrary, neither the state nor its subdivisions are included within general words of a statute." *Lucero v. Richardson & Richardson, Inc.*, 2002-NMCA-013, ¶ 11, 131 N.M. 522, 39 P.3d 739. Finally, the Lottery argues that Plaintiffs' referring to the Lottery as "an agency of the State of New Mexico" in their complaint and issuing their summons and complaint on the State of New Mexico refute their own claims. We are not persuaded.

**{16}** Section 57-12-10(C) states that "[t]he court shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice . . . if it finds that the party complaining of such trade practice brought an action that was groundless." This Court interpreted Section 57-12-10(C) in *G.E.W. Mechanical Contractors, Inc. v. Johnston Co.*, 115 N.M. 727, 733, 858 P.2d 103, 109 (Ct. App. 1993), and stated that "we do not read the statute to authorize an award of attorney[] fees to [the d]efendants merely because they successfully prevailed against the claims asserted by [the p]laintiff." Rather, this Court held that the defendants needed to show that "there [was] no arguable basis in law or fact to support the cause of action and the claim [was] not supported by a good-faith argument for the extension, modification, or reversal of existing law." *Id.*

**{17}** In reviewing the cases presented by the Lottery, we discern sufficient differences between the case law from other states and the situation in New Mexico to allow for plausible arguments, even if we do not ultimately agree with those arguments. *See, e.g.*, *Janis v. Cal. State Lottery Comm'n*, 80 Cal. Rptr. 2d 549, 553 (Ct. App. 1998) (holding that the lottery commission was not a "person" under the unfair practices act); Cal. Gov't Code § 8880.2 (West 2008) (referring to the lottery as a "state-operated lottery"); *see also Bretton v. State Lottery Comm'n*, 673 N.E.2d 76, 78 (Mass. App. Ct. 1996) (holding that the lottery commission, as part of the commonwealth, is not liable under the unfair practices act). Further, as demonstrated in our discussion above, even though the Lottery prevailed in its motion to dismiss, the issue of whether the Lottery is considered a "person" under the UPA is not as apparent in New Mexico as the Lottery indicates. *See G.E.W. Mech. Contractors, Inc.*, 115 N.M. at 733, 858 P.2d at 109 (declining to award attorney fees on the sole grounds that the plaintiff's claims were defeated). Additionally, although Plaintiffs do not address in their answer brief the Lottery's argument that Plaintiffs defining the Lottery as a state agency refutes Plaintiffs' claims, their counsel did state at the district court hearing on this issue that, although they used the word "agency" in the complaint—and "should have said instrumentality or used some other language"—it did not affect the validity of Plaintiffs'

6

argument. As to service on the state, Plaintiffs' counsel explained that he was merely "covering all of [his] bases" because he did not know if the Lottery was "going to argue that [it was] part of the [s]tate or . . . something different." Plaintiffs further explain that the Lottery's "unique statutory makeup" combined with the way it conducts business should qualify it as a "person" under the UPA because it is "certainly a business enterprise, albeit one created by the state."

**{18}** Although the Lottery is not subject to the UPA, there was an "arguable basis in law or fact to support the cause of action[,] and the claim [was] supported by a good-faith argument for the extension, modification, or reversal of existing law." *See G.E.W. Mech. Contractors, Inc.*, 115 N.M. at 733, 858 P.2d at 109. The district court's decision is not contrary to logic and reason, and it, therefore, did not abuse its discretion in denying the Lottery's motion for attorney fees.

**CONCLUSION**

**{19}** We affirm the district court's orders dismissing the action for failure to state a claim and denying the Lottery's motion for attorney fees.

**{20}    IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**

Topic Index for *Stansell v. NM Lottery,* Nos. 28,241/28,505

| | |
|---|---|
| **AT** | **ATTORNEYS** |
| AT-FG | Fees, General |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-FV | Frivolous Complaint |
| CP-MD | Motion to Dismiss |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-UP | Unfair Practices Act |

7

**ST**               **STATUTES**

ST-IP           Interpretation