IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ANNA MARIA CURCIO,

      Appellant,

v.

STATE OF FLORIDA
DEPARTMENT OF THE
LOTTERY D/B/A FLORIDA
LOTTERY,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-2324

Opinion filed May 27, 2015.

An appeal from the Circuit Court for Leon County.
Terry P. Lewis, Judge.

Howard S. Marks, of Burr & Forman, LLP, Winter Park, and Lawrence G. Walters, of Walters Law Group, Longwood, for Appellant.

Pamela Jo Bondi, Attorney General, and Teresa L. Mussetto and Joseph Spejenkowski, Senior Assistant Attorneys General, Tallahassee, for Appellee.

WETHERELL, J.

      Appellant's husband purchased what appeared to be a winning scratch-off lottery ticket worth $500,000, but Appellee (the Lottery) refused to pay the prize

because the ticket turned out to be a "misprint."  Appellant[1] sued the Lottery under a variety of legal theories.  The trial court granted judgment on the pleadings and summary judgment in favor of the Lottery.  For the reasons that follow, we affirm.

### *Factual and Procedural Background*

In May 2007, Appellant's husband purchased a $20 "Gold Rush" scratch-off lottery ticket.  The front of the ticket stated:  "Match any of YOUR NUMBERS to any of the WINNING NUMBERS, win prize shown for that number."  The back of the ticket stated that "[a]ll tickets, transactions, and winners are subject to Lottery Rules and State Law."  The rule adopted by the Lottery for the "Gold Rush" game specified that the "YOUR NUMBERS" and the "WINNING NUMBERS" are comprised of both "play symbols and play symbol captions," including **1** ONE and **13** THRTN .  See Fla. Admin. Code R. 53ER07-1(4), (5).

One of the "YOUR NUMBERS" on the ticket purchased by Appellant's husband was **1** ONE with an associated prize of $500,000.  One of the "WINNING NUMBERS" on the ticket also appeared to be a 1, but the caption under the number included the letters TH and a partial N, which indicated that the number was a 13,

---

[1]  Appellant became the holder of the ticket after her husband died.

not a 1 (*i.e.*, play symbol **13** THRTN , not play symbol **1** ONE ).[2]  The summary judgment evidence established that the missing portions of the **13** THRTN play symbol and caption was the result of a "misprint" caused by an ink jet malfunction in the machine that printed the ticket.

Appellant's husband presented the ticket to the retailer from whom he purchased the ticket for validation, but the ticket did not validate as a winner.  He then went to the Lottery's headquarters in Tallahassee to collect the $500,000 prize shown on the ticket.  The Lottery refused to pay the prize because it was not able to validate the ticket through its system.[3]

Thereafter, in May 2010, Appellant filed a complaint against the Lottery raising a variety of legal theories.  The complaint, as amended, alleged claims for breach of contract, equitable estoppel, unfair and deceptive trade practices, misleading advertising, and promissory estoppel.  All of the claims were based on the Lottery's refusal to pay Appellant the $500,000 prize despite what appeared to be matching numbers on the ticket.

---

[2]  The Appendix to this opinion contains a copy of Appellant's ticket and enlargements of the relevant portions of the ticket.

[3]  The trial court did not base the summary judgment on this ground because even though validation of the ticket is a mandatory requirement for payment of a prize, see Fla. Admin. Code R. 53ER06-4(11)(g), (i), (j), the court found that there was "at least some slight dispute of fact on that issue."  This factual dispute is immaterial to the issues raised by Appellant on appeal.

The trial court granted judgment on the pleadings in favor of the Lottery on the equitable estoppel claim[4] and granted summary judgment in favor of the Lottery on the other claims. The trial court reasoned that the unfair and deceptive trade practices and misleading advertising claims were barred by sovereign immunity[5] and that the Lottery was entitled to judgment as a matter of law on the promissory estoppel and breach of contract claims.

Appellant thereafter filed a motion for rehearing in which she argued that, under the Lottery's rules,[6] she was at least entitled to a judgment for the $20 purchase price of the ticket.[7] The Lottery filed a response in opposition to the motion in which it pointed out that the amended complaint alleged that the Lottery breached the

---

[4] Appellant does not challenge this ruling on appeal.

[5] The grant of summary judgment on these claims followed a decision from this court holding that "the sovereign immunity defense to Counts III [unfair and deceptive trade practices] and IV [misleading advertising] raises questions of law and can be resolved without resort to discovery." Dep't of Lottery v. Curcio, 71 So. 3d 931, 932 (Fla. 1st DCA 2011).

[6] See Fla. Admin. Code R. 53ER06-4(11)(j) ("In the event a defective ticket is purchased, the only responsibility or liability of the Florida Lottery shall be the replacement of the defective ticket with an unplayed ticket or tickets of equivalent sales price from a current Florida Lottery game, or refund the retail sales price.").

[7] Specifically, the motion asked the trial court to rehear and/or reconsider its disposition of the breach of contract and promissory estoppel claims and then "[a]ward judgment in favor of [Appellant] in the minimum amount of $20.00 representing the purchase price of the ticket." Alternatively, the motion sought to "conform the pleadings to the undisputed evidence, or permit [Appellant] to amend [the breach of contract count in the complaint] to alternatively assert that [the Lottery] breached the contract between the Parties by both failing to pay the promised prize and by failing to refund [Appellant] the $20 purchase price of the Ticket."

4

contract with Appellant by refusing to pay her the $500,000 prize, not by its failure to provide a $20 refund that Appellant never requested before filing suit. The trial court denied the motion without comment.

This appeal followed.

*Analysis*

Appellant raises three issues on appeal. First, she contends that the trial court erred in determining that her unfair and deceptive trade practices and misleading advertising claims are barred by sovereign immunity. Second, she contends that the trial court erred in determining that the Lottery did not breach the contract embodied in the lottery ticket when it refused to pay her the $500,000 prize.[8] Third, she contends that the trial court erred in determining that the Lottery could not be liable for promissory estoppel under the circumstances of this case.

We find no merit in any of the issues raised by Appellant.

With respect to the first issue, the trial court correctly ruled that although sovereign immunity has been waived for breach of contract claims against the State

---

[8] Notably, under this issue, Appellant did not argue that the trial court erred in entering judgment in favor of the Lottery on the breach of contract claim because she was entitled to a judgment for the $20 purchase price of the ticket pursuant to the Lottery's rules. Nor did Appellant argue that the trial court abused its discretion in denying her motion for rehearing on this point. She did raise her entitlement to a refund of the purchase price of the ticket in her argument on the promissory estoppel issue, but as discussed below, that claim is barred as a matter of law. Accordingly, the question of whether the trial court should have awarded Appellant $20 on her breach of contract claim is not properly before us in this appeal.

and its agencies, see Pan-Am Tobacco Corp. v. Department of Corrections, 471 So. 2d 4 (Fla. 1984), sovereign immunity has not been waived for the unfair and deceptive trade practices and misleading advertising claims asserted by Appellant. These claims are not common law tort claims subject to the waiver of sovereign immunity in section 768.28, Florida Statutes; they are statutory claims arising under part II of chapter 501 (unfair and deceptive trade practices) and section 817.41 (misleading advertising), respectively. Neither of those statutes contains a clear and unequivocal waiver of the State's sovereign immunity,[9] nor is there anything in the Lottery's enabling statute, chapter 24, Florida Statutes, that amounts to a clear and unequivocal waiver of sovereign immunity for the statutory claims alleged by Appellant. See generally Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 472 (Fla. 2005) ("[A]ny waiver of sovereign immunity must be clear and unequivocal.").

Moreover, even if the unfair and deceptive trade practices and misleading advertising claims were not barred by sovereign immunity, we would still affirm the summary judgment on these claims because the claims lack merit. The claims are premised on Appellant's allegation that the ticket purchased by her husband was a

---

[9]  Accord Stansell v. New Mexico Lottery, 211 P.3d 214, 217-18 (N.M. Ct. App. 2009) (holding that state's unfair trade practice statute did not apply to activities of the state lottery agency); Janis v. California State Lottery Comm'n, 68 Cal App. 4th 824, 831 (Cal. Ct. App. 1998) (same); Bretton v. State Lottery Comm'n, 673 N.E. 2d 76, 78-79 (Mass. App. Ct. 1996) (same).

6

winner. However, as more fully discussed below, this premise is refuted by the summary judgment evidence, which established that the ticket was not a winner based on the clear and unambiguous terms and conditions in the applicable statutes and rules that were incorporated by reference on the back of the ticket.

With respect to the second issue, the trial court correctly concluded that it was not a breach of contract[10] for the Lottery to refuse to pay Appellant the $500,000 prize shown on the ticket. In support of its conclusion, the trial court relied on section 24.115(1)(c), Florida Statutes, which provides in pertinent part that "[n]o prize may be paid arising from claimed tickets that are . . . produced or issued in error, unreadable, . . . lacking in captions that confirm and agree with the lottery play symbols as appropriate to the lottery game involved . . . ." The trial court reasoned that this statute

> is not some obscure, archaic detail that a reasonable person could not anticipate. It is only common sense that the state would want to insure, for the security of the lottery system and its many players, that prizes were not paid out because of either intentional conduct of parties or innocent mistakes in the production or issuance of tickets. Anyone who buys a lottery ticket knows, or should know, that there will be such security measures for protection of both the state and those who actually have a legitimate winning ticket.

The trial court went on to explain that:

---

[10] A lottery winner's entitlement to a prize is governed by principles of contract law. See Miller v. Dep't of Lottery, 638 So. 2d 172 (Fla. 1st DCA 1994); Haynes v. Dep't of Lottery, 630 So. 2d 1177 (Fla. 1st DCA 1994).

the fact that the word "misprint" is not included in the language of the [statute], does not mean it does not apply. Clearly, here, under the undisputed facts, the ticket was "produced or issued in error", and it also was "lacking in captions that confirm and agree with the lottery play symbols as appropriate to the lottery game involved." . . . .

I thus agree with the [Lottery] that under the undisputed facts, the above statutory exception is part of the contract and therefore there is no enforceable agreement between the [Appellant] and the [Lottery] to pay any prize to the [Appellant]. Even in the absence of the above-quoted statutory provision, under the undisputed facts, there would be no breach of contract as a matter of law. The agreement is that a prize will be awarded if the numbers match. Here there are two sets of "numbers". There is the arabic numeral (1) and an alpha numerical number (one). Although one of those numbers match with the winning number, both do not. The [Appellant] asserts that that is of no importance because the arabic numerals do match. That interpretation of the "contract", would render part of it meaningless, however, which is contrary to fundamental rules of interpretation. What purpose would the alpha numerical numbers play if they were not meant to be part of the "numbers" that match? I can't think of any other reason to include both the arabic numerals and alpha numerical numbers on the form except to validate or confirm that the number on the ticket matches the winning number.

We fully agree with this analysis and adopt it as our own. We note that this analysis is consistent with the decisions from other states rejecting breach of contract claims under nearly identical circumstances. See Consola v. New York, 84 A.D. 3d 1557 (N.Y. App. Div. 2011) (affirming summary judgment in favor of state lottery agency that refused to pay a $5 million prize because the disputed ticket contained an illegible play symbol caption resulting from a misprint that made it appear that one of the numbers was a 6 when it was actually a 26); Plourde v. Conn. Lottery Corp., 2000 WL 1918014 (Conn. Super. Ct. Dec. 18, 2000) (granting summary

8

judgment in favor of state lottery agency on breach of contract claim because state law prohibited payment on tickets printed in error and the ticket at issue contained game symbols 6 and 9 that resembled the winning number 8 but the captions below symbols read "six" or "nine"); Ga. Lottery Corp. v. Sumner, 529 S.E.2d 925 (Ga. Ct. App. 2000) (holding that state lottery agency did not breach contract in determining that scratch-off ticket was not a winner because the mark on the ticket that resembled the winning symbol resulted from a printing error); Valente v. Rhode Island Lottery Comm'n, 544 A.2d 586 (R.I. 1988) (reversing decision in favor of plaintiff who claimed to have won a $10,000 prize on a scratch-off lottery ticket because the winning number on the ticket was blurred and ambiguous and the ticket failed all of the lottery's validation tests); Ruggiero v. State Lottery Comm'n, 489 N.E. 2d 1022 (Mass Ct. App. 1986) (reversing decision in favor of plaintiff who claimed to have won a $100,000 prize on scratch-off lottery ticket because the evidence showed that the ticket had been misprinted and could not be validated as a winner as required by the applicable statutes and rules).

With respect to the third issue, the trial court correctly concluded that Appellant's promissory estoppel claim was merely a recasting of her breach of contract claim. The promise relied on by Appellant as a basis for this claim was the Lottery's promise on the face of the ticket to pay a prize if the numbers on the ticket matched; however, this was the precisely the same ground on which Appellant's

9

breach of contract claim was based. Because Appellant failed to prove her breach of contract claim, she cannot get "a second bite at the apple" by recasting the claim as one of promissory estoppel. See Advanced Mktg. Sys. Corp. v. ZK Yacht Sales, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) ("Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.") (quoting Gen. Aviation, Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1042 (6th Cir. 1990)). Moreover, on the merits, the trial court correctly noted that because "the numbers didn't match . . . [the Lottery] did not fail to deliver on that promise as a matter of law."

### *Conclusion*

For the foregoing reasons, we affirm the judgment in favor of the Lottery.

AFFIRMED.

ROWE and MAKAR, JJ., CONCUR.

10

# APPENDIX

Appellant's ticket



Enlargement of the relevant portion of the
"WINNING NUMBERS" play area on Appellant's ticket



Enlargement of the relevant portion of the
"YOUR NUMBERS" play area on Appellant's ticket

