This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38241

**CITIZENS BANK N.A.,**

　　　Plaintiff-Appellant,

v.

**ERIN BURNWORTH and
LEROY J. GUTIERREZ,**

　　　Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY
Donna J. Mowrer, District Judge**

Keleher & McLeod, P.A.
Cassandra R. Malone
Albuquerque, NM

for Appellant

Hanratty Law Firm
Kevin J. Hanratty
Artesia, NM

for Appellee Erin Burnworth

Mark S. Sweetman
Clovis, NM

for Appellee Leroy J. Gutierrez

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}**　　Citizens Bank appeals the district court's dismissal of its consumer debt action against Erin Burnworth and Leroy Gutierrez. The dismissal was based on the district court's finding that under either NMSA 1978, Section 37-1-3(A) (2015) or NMSA 1978,

Section 37-1-4 (1880), the statute of limitations had run[1]. On appeal, Citizens Bank argues that (1) the six-year statute of limitations applies to this contractual dispute, as opposed to the four-year statute of limitations; (2) that the district court erred in holding that the doctrine of merger applied; and (3) that the district court erred in finding a written agreement was required to modify the payment date in the disclosure statement. We reverse and remand.

**BACKGROUND**

**{2}** This is a consumer debt action founded on a student loan contract between the parties to this case. In 2008, borrowers Burnworth and Gutierrez cosigned a credit agreement, identified as an "Astrive Undergraduate Loan," from lender Citizens Bank so that Burnworth could pursue her undergraduate education. Burnworth and Gutierrez elected the "Full Deferral" repayment option on the loan, meaning that payment on the loan was deferred until either Burnworth finished school or five-and-a-half years had passed since the loan's disbursement date, whichever occurred first.

**{3}** The loan documents included a disclosure statement which identified July 15, 2011, as the date the loan entered repayment. The repayment date changed twice due to Burnworth's extended enrollment in school and was ultimately set for December 9, 2014. Neither Burnworth nor Gutierrez began repaying the loan on that date.

**{4}** On August 2, 2018, Citizens Bank filed a complaint against Burnworth and Gutierrez, asserting that payments were due beginning December 9, 2014, and that the loan was now in default. Gutierrez filed a motion to dismiss. Citing the repayment date of July 15, 2011, identified in the disclosure statement, Gutierrez argued that Citizens Bank's claim fell outside of the six-year statute of limitations under Section 37-1-3(A). After hearing argument on the motion, the district court denied Gutierrez's motion and ordered Citizens Bank to file an amended complaint containing a writing demonstrating a December 9, 2014 repayment date.

**{5}** Citizens Bank subsequently filed a first amended complaint to which it attached the credit agreement, the disclosure statement, several documents from American Education Services reflecting multiple changes in Burnworth's school separation date and repayment date, and an affidavit authenticating the attachments. Gutierrez again moved to dismiss the complaint for being outside the statute of limitations as well as for Citizens Bank's failure to comply with the district court's order. Burnworth moved for summary judgment asserting in part: (1) the disclosure statement identified a July 15, 2011 repayment date; (2) the terms of the loan agreement require that any modification to the agreement must be jointly agreed upon and in writing; (3) Citizens Bank failed to serve or file with the district court any such writing; (4) no such writing exists; and (5) the statute of limitations had run on Citizens Bank's claim.

---

[1]The district court made no finding as to which statute of limitations applied to the consumer debt action in this case.

**{6}** The district court found that the credit agreement merged into the disclosure statement, making the loan's repayment date July 15, 2011. The district court also found that Citizens Bank attached no writings to its first amended complaint modifying this payment date. Therefore, based on its application of merger, the district court determined that, under either Section 37-1-3(A) or Section 37-1-4, the statute of limitations had run, granted both motions and dismissed the case. This appeal followed.

## DISCUSSION

**{7}** The district court's granting of both motions and ultimate dismissal of the case was based on its finding that Citizens Bank's time to file a claim had run under either Section 37-1-3(A) or Section 37-1-4. The district court reached this conclusion by applying the doctrine of merger to the credit agreement and disclosure statement. For the reasons explained below, we hold that the district court erred as a matter of law when it applied the doctrine of merger to interpret the terms of the credit agreement and disclosure statement. We therefore reverse and remand for further proceedings. Because we reverse and remand on the issue of merger, we do not address the remaining issues.

### Standard of Review

**{8}** Gutierrez and Burnworth respectively filed a motion to dismiss and a motion for summary judgment. The district court granted both motions and dismissed the case. "A motion to dismiss for failure to state a claim under Rule 1-012(B)(6) [NMRA], tests the legal sufficiency of the complaint, accepting all well-pleaded factual allegations as true." *Henderson v. City of Tucumcari*, 2005-NMCA-077, ¶ 7, 137 N.M. 709, 114 P.3d 389 (internal quotation marks and citation omitted). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). Our standard of review for both motions is de novo. *Henderson*, 2005-NMCA-077, ¶ 7; *see also Vill. of Wagon Mound v. Mora Tr.*, 2003-NMCA-035, ¶ 57, 133 N.M. 373, 62 P.3d 1255 ("The applicable standard of review of an appeal on summary judgment is de novo[.]"). Whether the district court erred in applying the doctrine of merger to the credit agreement and disclosure statement is a question of law that we review de novo. *See W. Farm Bureau Ins. Co. v. Carter*, 1999-NMSC-012, ¶ 4, 127 N.M.186, 979 P.2d 231(holding that the interpretation of a contract is an issue of law that is reviewed de novo); *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844 ("Whether contractual terms are ambiguous is a question of law, subject to de novo review.").

### The Doctrine of Merger

**{9}** Citizens Bank argues that the district court erred when it applied the doctrine of merger to the credit agreement and disclosure statement. Specifically, Citizens Bank contends that the two documents should be read and construed together because the credit agreement incorporates the disclosure statement by reference. Citizens Bank

also argues that applying the doctrine of merger would violate the federal Truth in Lending Act (TILA). Gutierrez responds that the district court correctly applied the doctrine of merger because the disclosure statement was the defining document and contained different terms than the credit agreement. Gutierrez also asserts that the district court's order is consistent with the TILA because the law is designed to protect borrowers.[2]

**{10}** Determining whether the doctrine of merger applies to the credit agreement and disclosure statement requires us to interpret the language of those two documents. When interpreting a contract, "we view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651. "The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 (alteration, internal quotation marks, and citation omitted).

**{11}** "The doctrine of merger is a contract principle that prior agreements on the same subject matter are presumed to be included in the final contract." *Superior Concrete Pumping, Inc. v. David Montoya Constr., Inc.*, 1989-NMSC-023, ¶ 13, 108 N.M. 401, 773 P.2d 346. "Merger applies only to successive agreements that encompass the same subject matter and contain inconsistent terms." *Id.* Generally, one contract will not merge into the other unless the plain language of the contract shows the parties intended the merger. *Id.*

**{12}** *Richards v. Allianz Life Ins. Co.* illustrates the proper application of the doctrine of merger. 2003-NMCA-001, 133 N.M. 229, 62 P.3d 320. In *Richards*, Richards signed two agent contracts with an insurance agency, one in 1966 and one in 1968. *Id.* ¶ 3. Under the 1966 contract, either party could terminate the contract by providing a thirty-day written notice, whereas the 1968 contract allowed for termination with only a fifteen-day written notice. *Id.* Allianz purchased the insurance agency in the 1970s and assumed all of the insurance agency's rights and obligations under the 1966 and 1968 contracts. *Id.* In 1994, Allianz began to disseminate notices to its agents that all existing agent contracts would terminate in December 1995, however, Richards denied having received any such notice prior to December 21, 1995. *Id.* ¶ 4. During a later phone call, Allianz informed Richards that he would lose access to information and material necessary to service his policy holders if he did not execute a new service agreement with Allianz. *Id.* ¶ 5. The 1996 agreement included an arbitration clause for "[a]ny controversy or claim arising out of or relating to [the a]greement, including its interpretation, validity, scope, and enforceability, or breach of its terms[.]" *Id.* ¶ 7.

**{13}** Allianz later filed an arbitration claim against Richards due to a dispute regarding commission fees. *Id.* ¶ 6. Richards responded by filing an application to stay arbitration,

---

[2] Burnworth "agrees with . . . Gutierrez'[s] factual and legal analysis" but does not make her own distinct argument on the doctrine of merger.

arguing, among other things, that the 1996 agreement did not comply with the termination notice provisions of the 1960s contracts and that the 1996 agreement was not intended to substitute or override those contracts. *Id.* ¶ 6. The district court agreed, denying the insurance company's motion to compel arbitration. *Id.* ¶ 6.

**{14}** We reversed, holding that the 1996 agreement unambiguously contemplated that it substituted for and therefore merged with the 1960s agreements. *Id.* ¶ 14. The plain language of the 1996 agreement triggered merger due to two clauses: a binding effect clause that "supercede[d] any and all other agreements either written or oral between the parties" and a conflict clause that stated "[t]o the extent that this agreement conflicts with prior agreements, if any, between these parties this agreement and its provisions will control." *Id.* ¶ 13 (internal quotation marks omitted). We held that the plain language of the 1996 agreement intended it to merge with the 1960s contracts, obviating the 1960s contracts and their notice provisions. *Id.* ¶ 14.

**{15}** Here, the documents do not reflect that the parties plainly intended the credit agreement and the disclosure statement to merge together. The credit agreement explicitly states that "[i]f [the lender] approves this request and agree[s] to make this loan, [the lender] will notify [the borrower] in writing and provide [the borrower] with a [d]isclosure [s]tatement, as required by law, at the time the loan proceeds are disbursed. The [d]isclosure [s]tatement is incorporated herein by reference and made a part hereof." The credit agreement then describes how the disclosure statement operates separately from, but in relation to, the credit agreement itself, requiring the borrower to notify the lender if they wish to cancel the loan after reviewing the disclosure statement in accordance with the requirements of the credit agreement. The disclosure statement also references the credit agreement, directing the borrower to "[s]ee [their] contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties."

**{16}** The plain language of the credit agreement and disclosure statement refer to one another. When two documents refer to each other, they are properly construed together. *Bd. of Educ. v. James Hamilton Constr. Co.*, 1994-NMCA-168, ¶ 13, 119 N.M. 415, 891 P.2d 556. Further, unlike in *Richards*, there is no language, ambiguous or unambiguous, that contemplates one of these documents substituting for the other. The plain language of the credit agreement and disclosure statement reflects an intent for the documents to work together, and we construe them as such.

**{17}** To the extent Gutierrez argues that the credit agreement and disclosure statement contain inconsistent terms, we disagree. Gutierrez correctly highlights that the documents contain different terms, such as the example fee rate in the credit agreement's loan origination fee clause and the final origination fee on the disclosure statement. However, just because the documents contain different terms does not mean those terms are inconsistent. *Cf. Tharp v. Allis-Chalmers Mfg. Co.*, 1938-NMSC-044, ¶ 5, 42 N.M. 443, 81 P.2d 703 (holding that in a sales contract action, implied warranties are not excluded by express warranties relating to different subject-matter so long as

the two are not inconsistent). To use Gutierrez's example, the credit agreement's loan origination fee clause tells the borrower that they must pay an origination fee if charged and gives an example of how that fee is calculated. The disclosure statement informs the borrower of the actual fee. These terms, while different, do not conflict with one another and, in fact, operate together.

**{18}** Additionally, we note that merging the two documents is contrary to the purpose of TILA. The TILA requires lenders of private education loans to make certain disclosures to borrowers. 15 U.S.C. § 1638(e). These disclosures contain essential terms of the borrower's loan—for example, the final disclosures made on acceptance of the loan must contain the loan's interest rate, fees and default or late payment costs, repayments terms, and the borrower's cancellation rights. 15 U.S.C. § 1638(e)(4); 12 C.F.R. § 226.47(c)(1)-(4). The lender must make these disclosures in writing and segregate them from all other documents. 12 C.F.R. § 226.46(c)(2)(i). Merging the credit agreement and disclosure statement would defeat the TILA's purpose of requiring lenders to clearly and conspicuously disclose essential loan information separate from other loan documents. We will not interpret contracts to violate the law. *See McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65 ("New Mexico public policy favors freedom to contract and enforces contracts that do not violate law or public policy.").

**{19}** Based on the foregoing, we hold that the district court erred when it applied the doctrine of merger to the credit agreement and disclosure statement. This holding necessarily means that the district court erred in finding the repayment date to be July 15, 2011. Because Citizens Bank filed its original complaint in August 2018 and asserted payments were due beginning December 9, 2014, Citizens Bank's claim is timely filed under either the six-year or four-year statute of limitations.

**{20}** We therefore reverse and remand to the district court for proceedings consistent with this opinion. Consequently, we need not reach the remaining issues presented to this Court. *See Yeager v. St. Vincent Hosp.*, 1999-NMCA-020, ¶ 6, 126 N.M. 598, 973 P.2d 850 (declining to address issues unnecessary for a decision).

## CONCLUSION

**{21}** For the forgoing reasons, we reverse the district court's dismissal and remand this matter to the district court in accordance with this opinion.

**{22} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**